UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GRETA MCCLAIN AND MICHAEL FONDREN, on behalf of themselves and those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:17-cv-00408 |
| | ) | Chief Judge Crenshaw |
| FIRST ACCEPTANCE CORPORATION | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, is the Motion for Conditional Certification, Approval of § 216(b) Notice and Consent Forms, and to Order Disclosure of Contact Information for Current and Former Employees (Doc. No. 17) filed by Plaintiffs Greta McClain and Michael Fondren . Defendant First Acceptance Corporation ("First Acceptance") has responded in opposition (Doc. No. 27), and Plaintiffs have filed a reply (Doc. No. 34-1). For the reasons stated below, conditional certification will be granted.

### I. Factual Background

According to the Complaint, Plaintiffs were Total Loss Claims Adjusters for First Acceptance, a provider of personal automobile insurance and other related products at over 350 retail locations in 12 states. The upshot of the Complaint is that Plaintiffs and those they seek to represent were misclassified, thereby depriving them of overtime to which they were entitled. Accordingly, Plaintiff seek to represent a class consisting "of themselves and all other past and present employees of Defendant who were employed as Total Loss Claims Adjusters (or those who performed similar tasks, however titled) at any time from March 2, 2014, through the present." (Doc. No. 17-1 at 2).

1

In support of the Motion for Conditional Certification, Fondren submitted a Declaration that, after setting forth his period of employment with First Acceptance, states:

> 4. As a total loss claims adjuster for Defendant, my duties were to process the paperwork for property damage claims previously determined by the Defendant to be total losses.
>
> 5. As a total loss claims adjuster, I was trained by the Defendant as to how to perform my job. I was provided the same training as other total loss claims adjusters.
>
> 6. When I worked for Defendant, I observed and was aware of numerous other total loss claims adjusters who worked for Defendant. From March 2, 2014, through the present, I believe there were dozens of other persons employed as total loss claims adjusters who performed the same job duties that I performed and who also did not receive overtime pay when they worked more than 40 hours in a workweek.
>
> 7. During that time period, all total loss claims adjusters were performing similar tasks in keeping with our training. In addition, all total loss claims adjusters were subject to the same common policies and practices. To my knowledge, I did my job in a substantially similar way as other total loss claims adjusters working for Defendant.
>
> 8. Throughout my employment, the Defendant had a common policy of not paying overtime pay which they applied to all total loss claims adjusters employed by them.
>
> 9. As alleged in the First Amended Complaint, even though I often worked in excess of 40 hours a week, the Defendants never paid me any overtime.

(Doc. No. 19, Fondren Decl. ¶¶ 4-9). Fondren also states that an attached summary for the position of "Claim Adjuster –Total Loss" is the same position he and McClain held.

Plaintiffs claim that, contemporaneously with the filing of their Reply, they submitted the Declaration of McClain, which is "consistent with the Fondren Declaration," and which was provided to First Acceptance "more than two (2) weeks before they filed their Response." (Doc. No. 34-1). The Court finds no Declaration from McClain in the record, however.

2

## II. Legal Discussion

The FLSA generally requires that employers pay employees specified hourly rates for up to 40 hours per week, and pay overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours in a week. 29 U.S.C. § 207. To enforce this provision, an aggrieved employee may bring a collective action on his own behalf, and on behalf of all those who are "similarly situated" and who "opt-in" by giving consent in writing to become a party. 29 U.S.C. § 216(b).

Lead plaintiffs bear the burden of showing that opt-in plaintiffs are substantially similar. Frye v. Baptist Memorial Hospital, Inc., 495 Fed. App'x 669, 672 (6th Cir. 2012). The standards used for determining whether employees are similarly situated – and hence whether conditional certification is appropriate – depend upon the stage of the case.

Where, as here, the request is made early in the case and prior to discovery, the standard is "fairly lenient," and requires Plaintiff to make "'a modest factual showing'" that "'typically results in conditional certification of a representative class.'" Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (quoting, Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 594 (S.D. Ohio 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated" because "'the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard.'" Id. (quoting Morisky, 111 F. Supp. 2d at 497).

First Acceptance argues Plaintiffs have not met the modest factual showing because they "seek conditional certification armed only with a single, conclusory declaration in which Plaintiff Fondren carefully avoids a description of his actual job duties." (Doc. No. 27 at 1). First Acceptance

3

quotes Shipes v. Amurcon Corp., 2012 WL 995362, at *10 (E.D. Mich. 2012) for the proposition that, in misclassification cases, a plaintiff "must make a factual showing that the nature of the work performed by all class members is at least similar to [his] own.'" (Doc. No. 27 at 1). But Shipes also states that, "[a]t the notice stage, the plaintiffs must show that there is a reasonable basis for their claim that there are other similarly situated employees," 2012 WL 995362, at *4, and First Acceptance insists "as Plaintiff's concede, the Court must consider *all* of the evidence before it." (Id. at 2) (emphasis in original). Therein lies the rub: First Acceptance's own evidence shows that a class of similarly situated total loss claims adjusters exists.

First Acceptance has submitted the declarations of one former and two present total loss adjusters. It has also submitted a declaration from the Senior Director of Property Claims, a declaration from the Claims Technical Supervisor, and a declaration from a Vice President, all of whom have supervisory responsibilities over the total loss adjusters. Those declarations are substantially in accord and typical is the one submitted by Tommi Johnson.

In her declaration, Johnson states that total loss adjusters are insurance adjusters responsible for investigating and settling claims involving vehicles that have been deemed a total loss. When a total loss adjuster receives a claim, it has been assigned only an initial assessment of the actual cash value of the vehicle. The adjuster must then confirm the accuracy of the appraisal, and contact the customer to determine whether the appraisal should be adjusted and, if so, by how much. This necessitates the total loss adjuster to assign a value to the vehicle based upon its condition (*e.g.* stellar, average, fair, or poor). It also requires the adjuster to determine whether there is prior unrelated damage by interviewing the claimant; analyzing photographs to see if the damage is consistent with the facts of the accident; and reviewing the claim history and Carfax reports. (Doc. No. 28, Johnson Decl. ¶¶ 3-6).

Total loss adjusters are also responsible for determining the compensation customers should receive for the "loss of use" of their vehicle while the claim is being investigated and settled. Although the baseline amount is $200, total lost adjusters must use their "good judgment" to determine the proper loss of use and may negotiate a higher amount or grant additional days for loss of use if appropriate. (Id. ¶ 7).

According to Johnson, the total loss adjuster's "primary responsibility" is "to assess claims and then negotiate with the claimant to arrive at a settlement. " (Id. ¶ 8). In short, "[i]t is the Total Loss Adjustor's job to review the claim, communicate with the customer, and then ultimately decide what needs to be done to get the claims settled." (Id.).

First Acceptance undoubtedly submitted the declarations to show that total loss adjusters are required to exercise independent judgment and discretion while executing their job duties and that, therefore, they are properly characterized as exempt under the FLSA and not entitled to overtime. At this stage of the litigation, however, those same declarations actually hurt more than they help First Acceptance for two reasons.

First, "[a]t the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." Swigart v. Fifth Third Bank, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (collecting cases); see Bradford v. Logan's Roadhouse, Inc., 137 F. Supp. 3d 1064, 1075 (M.D. Tenn. 2015) (collecting cases for the proposition that "substantive arguments against certification that are based upon the merits of the plaintiffs' FLSA case are premature" at the conditional certification stage); Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) (same). This approach has also been found to apply where, as here, a defendant is claiming employees were properly classified. See Neff v. U.S. Xpress, Inc., 2013 WL 4479078, at *4 (S.D. Ohio Aug. 20,

2013) (stating that "a court does not address or reach the merits of a misclassification claim at the conditional notice stage"); see also Harris v. Express Courier Int'l, Inc., 2016 WL 5030371, at *4 (W.D. Ark. Sept. 19, 2016) (observing that "requiring Plaintiffs at the certification stage to prove that they were misclassified . . . prematurely delves into the merits of Plaintiffs' claims); Lloyd v. J.P. Morgan Chase & Co., 2013 WL 4828588, at *3 (S.D.N.Y. Sept. 9, 2013) (citation omitted) (noting that "'courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying' employees as exempt'").

Second, the critical issue at the conditional certification stage is whether a definable group of similarly situated plaintiffs exists, and First Acceptance's own declarations show that there is. Tellingly, First Acceptance does not claim that either Plaintiff was not a total loss adjuster, or that they did not do the same work in the same manner as the total loss adjusters who filed declarations. In fact, Mike Woodbridge, the Senior Director of Property Claims submitted a declaration in which he states that "[c]onflict resolution is a key aspect" of a total loss adjuster's job and then evaluates both Plaintiffs on their ability to handle conflict. (Doc. No. 32, Woodbridge Decl. ¶ 9). Further, David Hick, First Acceptance Vice President, states in his declaration that he worked with Fondren and discusses his interaction with him in Fondren's role as a total loss adjuster. (Doc. No. 29, Hicks Decl. ¶ 11). Thus, the Court rejects First Acceptance argument that Fondren's "conclusory declaration dooms Plaintiffs' Motion." (Doc. No. 27 at 9).

The Court also rejects First Acceptance's argument that conditional certification should be denied because "Plaintiffs have not demonstrated any interest by other Total Loss Adjusters to participate in this lawsuit," and, in fact, "more TLAs [Total Loss Adjustors] have submitted declarations denying the premise of Plaintiffs' claims than have shown interest in joining the lawsuit."

(Doc. No. 27 at 14-15). "Happy camper" declarations– so called because they tend to be from present or former employees handpicked by a defendant/employer–are routinely given little or no weight at the conditional certification stage. See Myers v. Marietta Mem'l Hosp., 201 F. Supp. 3d 884, 891-92 (S.D. Ohio 2016) (citation omitted) ("form affidavits 'gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion'"); Tinsley v. Covenant Care Servs., LLC, 2016 WL 393577, at *9 (E.D. Mo. Feb. 2, 2016) (collecting cases for the proposition that "Courts have afforded no weight to 'happy camper' affidavits at the conditional certification phase"); Avendano v. Averus, Inc., 2015 WL 1529354, at *7 (D. Colo. Mar. 31, 2015) (collecting cases indicating that courts "generally afford little importance to the so-called 'happy camper'" when ruling on conditional certification).

Moreover, that no others have evidenced a desire to join the suit at this juncture is hardly surprising because it is difficult to express an interest in something one knows nothing about. See Ware v. T-Mobile USA, 828 F. Supp. 2d 948, 955 (M.D. Tenn. 2011) (citation omitted) (stating that "'the logic behind defendants' proposed procedure—requiring [the plaintiff] to show that others want to join in order to send them notice asking if they want to join—escapes the Court"). Besides, "the Sixth Circuit has never required evidence that others will opt in before the certification decision can be made," Shipes, 2012 WL 995362, at *9 (E.D. Mich. Mar. 23, 2012), and "[r]equiring a plaintiff to make an advance showing that others want to join would undermine the 'broad remedial goal' of the FLSA," Ware, 828 F. Supp. 2d at 955 (citation omitted).

It may be, as First Acceptance insists, that total loss adjusters fall under the administrative exemption of the FLSA, but the time for making that determination comes later, either on a motion for decertification or a motion for summary judgment. For now, the sole question is whether a modest factual basis exists to determine that Plaintiffs and others are similarly situated, *i.e.*, that they and the

7

class they seek to represent suffered or "suffer from a single, FLSA-violating policy." Gunn v. NPC Int'l, Inc., 625 Fed. App'x 261, 267 (6th Cir. 2015) (quoting O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 585 (6th Cir. 2009)). That basis exists in this case and warrants conditional certification.

There remains the question of Notice and Consent Forms and how they are to be disseminated. Plaintiffs request that Notice be sent via first class mail and email, and that it also be posted in the workplace and enclosed with the next regularly scheduled paycheck for members of the putative class. Defendant request that Notice only be sent by regular mail and that they should only be required to produce the name and addresses of employee, and not any further information, such as social security numbers, telephone numbers, or e-mail addresses of putative class members.

Although support can be found for both parties' position, "courts within the Sixth Circuit have routinely approved dual notification through regular mail and email." Evans v. Caregivers, Inc., 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (citing Williams v. King Bee Delivery, LLC, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017) and Fenley v. Wood Grp. Mustang, Inc., 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016)). "They also have required that employers post the notice at a conspicuous location in their facilities, . . . and provide copies with employees' paychecks[.]" Id. (citing Jowers v. NPC Int'l, Inc., 2016 WL 7238963, at *8 (W.D. Tenn. Dec. 13, 2016); Brown v. Consol. Rest. Operations, Inc., 2013 WL 4804780, at *7 (M.D. Tenn. Sept. 6, 2013)). In the absence of any showing of prejudice in providing notice beyond regular mail and because the FLSA requires that putative class members be provided with notice of this lawsuit and apprised of their rights, the Court will approve the dissemination of Notice in the manner requested by Plaintiff.

As for the requirement that Defendant provide anything beyond the names, addresses, and last known email addresses of putative class members, the Court finds such disclosure inappropriate at

this time, particularly since there has been no showing of a particularized need. See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) (collecting cases) ("Courts are reluctant . . . to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action."); Bradford, 137 F. Supp. 3d at 1080 (refusing to require the disclosure of social security or telephone numbers in the absence of evidence showing the need for the same); Wolfram v. PHH Corp., 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (same).

Finally, Plaintiffs have submitted a proposed Notice and Consent Form that is not atypical of those that have issued in the past. Nevertheless, courts commonly require the parties to confer about the language to be included in the Notice and Consent Form, with the goal being to reach an agreement. See Patton v. ServiceSource Delaware, Inc., 2016 WL 4441424, at *4 (M.D. Tenn. Aug. 23, 2016) (observing that " it makes sense that the parties be allowed an opportunity to negotiate the language," and stating that "[t]he parties should make every effort to agree on the Proposed Notice and Consent Forms and not squander this opportunity because it is unlikely that the Court will meld competing notices, rather than choose one form over the other"); Miller v. Jackson, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (observing there was nothing "alarming about the proposed Notice and Consent forms," but requiring the parties to "meet and confer in good faith regarding these issues").

## IV. Conclusion

On the basis of the foregoing, the Court will conditionally certify this matter as a collective action, and First Acceptance will be required to furnish Plaintiffs with a list of the putative class members that includes their last known physical and email addresses. The parties will be provided with an opportunity to reach an agreement as to the Notice and Consent Form.

9

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE