IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GRETA MCCLAIN AND MICHAEL FONDREN, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST ACCEPTANCE CORPORATION, <br><br> Defendant. | Case No. 3:17-cv-00408 |

### JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Following mediation with an experienced third-party neutral, Michael Russell, Esq., Representative Plaintiffs Greta McClain and Michael Fondren, individually and on behalf of the Opt-In Plaintiffs who joined this lawsuit, and Defendant First Acceptance Corporation ("Acceptance") reached a proposed settlement in the above-captioned case. The Parties respectfully request that the Court approve their proposed settlement of this Fair Labor Standards Act ("FLSA") collective action seeking alleged overtime compensation and dismiss this case with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and alleged damages under the FLSA. Additionally, Plaintiffs also seek an award of attorneys' fees and costs, as well a service recognition payment to Named Plaintiffs for their efforts in this lawsuit to date. Defendant does not oppose these requests.

### BACKGROUND

### I. Relevant procedural and factual history

On March 2, 2017, the Named Plaintiffs filed a Complaint alleging claims under the FLSA. (*See* Docket No. 1). On March 3, 2017, amended their complaint to file collective

1

action lawsuit on behalf of themselves and those "similarly situated." (Docket No. 6). Plaintiffs are former Total Loss Claims Adjusters working in the insurance industry. (*See id.* ¶ 5). Plaintiffs allege that Acceptance misclassified Total Loss Claims Adjusters as exempt and thus paid them no overtime. (*See id.*).

Defendants strongly dispute these allegations. Acceptance contends that Total Loss Claims Adjusters were properly classified as exempt under the FLSA's administrative exemption. (*See* Def.'s Answer, Docket No. 9, at p. 6). When classifying these employees as exempt, Acceptance relied upon regulations promulgated by the Department as Labor, which state as follows:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 CFR 541.203(a).

On May 10, 2017, Plaintiffs filed a motion for conditional certification, seeking to certify a collective action in this matter. (*See* Docket No. 17). Defendant opposed this motion. (*See* Docket No. 27). When opposing this motion, Defendant submitted several declarations from Total Loss Claims Adjusters, which allegedly described their job duties. (*See* Docket Nos. 29-33). Those declarations set forth the various types of discretions and independent judgment that Total Loss Claims Adjusters allegedly exercise at Acceptance. (*See id.*). As set forth in Defendant's brief and the supporting declarations, Defendant was steadfast in their belief that Total Loss Class Adjusters were properly classified as exempt. Defendant strenuously maintained that Total Loss Adjustors were properly classified and submitted evidence that it

2

believed supported this classification. Plaintiffs' likewise strenuously disputed this evidence. Plaintiffs believe the declarations are self-serving, happy camper declarations which would have been contradicted by the evidence. Further, while Plaintiffs recognize the regulation relied upon by the Defendant, Plaintiffs do not believe the regulation is applicable to Total Loss Adjusters due to the duties performed by those employees.

On August 1, 2017, the Court granted Plaintiffs' motion for conditional certification. (*See* Docket No. 37). During the subsequent notice period, five individuals opted into this litigation. (*See* Docket Nos. 41, 42, 43, 44).

Acceptance reclassified all Total Loss Claims Adjusters on December 1, 2016.[1] Acceptance possesses time records for Ms. Jaqueline Webb, one of the Opt-In Plaintiffs, for the periods she worked both before and after December 1, 2016. Those records show that post-reclassification, she worked very little overtime. Defendants contend that the substance of the job and the amount of time employees devoted to it did not change after this reclassification; Plaintiffs contend the position and hours changed significantly after reclassification. Additionally, it is Defendant's position that Ms. Webb's time records validate the "proxies" Defendant would use at trial in a damage analysis for all Plaintiffs and Opt-Ins for time worked prior to December 1, 2016. Defendant has produced data showing when these individuals interacted with their work email accounts and computer programing related to managing total loss claims. Defendant contends that data reveals that the Plaintiffs and Opt-Ins rarely worked more than 40 hours per week. Defendant further contends that a comparison of Ms. Webb's email and claim data with her clock in and out records after December 1, 2016 validated that these proxies are accurate proxies for her time worked. Defendant's position is that these proxies

---

[1] As fate would have it, those regulatory changes to the salary basis test did not go into effect, as anticipated. In late November 2016, the Department of Labor was enjoined from implementing those changes. Subsequently, a new administration made clear that it would no longer implement those changes to the salary basis test.

3

show that even if the Plaintiffs and Opt-Ins were misclassified, their amount of overtime was low. Plaintiffs contend that the time study of the Defendant is incomplete, inaccurate and that the Plaintiffs were engaged in significant work in performance of their job duties which was not captured by a review of their email accounts and computer program data. Plaintiffs submit the proof would show that they worked an average of 45-55 hours per week and were entitled to 5-15 hours of overtime per week.

In short, this is a case that seemed ripe for mediation. There are only seven participants in the lawsuit, and if Plaintiffs prevail the available damages are relatively low. Both sides faced risks. As for the Plaintiffs, Acceptance was relying on a specific Department of Labor regulation it believed was directly on point. Thus, good faith and willfulness were significant issues that had to be recognized by Plaintiffs. Further, liability was hotly contested by Defendant. Thus while Plaintiffs were confident in their case, they faced a risk of taking nothing or very little from this lawsuit. As for the Defendant it faced the risk of a verdict as well as expensive class litigation in a case with a limited number of plaintiffs. For both sides, the math militated towards resolution.

On December 13, 2017, the parties and their counsel participated in mediation before Michael Russell. Mr. Russell mediates about 100 cases per year, the majority of which are labor and employment cases. The case was not resolved on the day of mediation. However, Mr. Russell continued his efforts. In fact, with the parties at an impasse, Mr. Russell made a mediator's proposal which was accepted by both sides. Thus, on December 19, 2017, the parties agreed to a settlement in principle.

## II. Terms of the proposed settlement

### A. Settlement amount and allocation

The agreed-to settlement amount contemplates a payment to the Plaintiffs in the amount of $75,000.00, inclusive of attorneys' fees. From this amount, the two Named Plaintiffs and five Opt-Ins will receive a collective award of $25,000.00. This amount is the equivalent of eight hours of overtime compensation for each Opt-In Plaintiff for each week they worked for Defendant during the entire three year Recovery Period. It is contemplated that after attorney fees, costs and service payments that, on average, each Opt-In Plaintiff will receive approximately $2,900. Of course, the distribution will take into account each individual Plaintiff's salary and length of employment within the Recovery Period. Finally, the settlement contemplates that Defendant will pay the sum of $50,000.00 to Class Counsel for fees and costs.

Class Counsel hereby moves that its fee of $50,000.00 be approved by the Court. Class Counsel has spent significant time and resources investigating this case, reviewing Defendant's documents and policies and interviewing witnesses in order to get a firm grasp on the liability and other issues in this case. (Klett Decl ¶ 19.) Class Counsel has spent a significant amount of time drafting the Complaint, Plaintiffs' Motion for Conditional Certification, reviewing Defendant's Response, including the documents and declarations relied upon by Defendant, and drafting a reply thereto. (*Id.* ¶ 20) In addition, Class Counsel drafted a Class Notice and worked with Defense Counsel in drafting a modified Class Notice after conditional certification was granted by the Court. (*Id.*) At present, Class Counsel has invested over 140 hours of attorney time on this case and will spend more hours finalizing this settlement and distributing the settlement proceeds. (*Id.* ¶21.) Even at counsel's standard rate with no lodestar multiplier, the time expended and actual fees incurred far exceeds the requested amount. (*Id.* ¶ 25.) Further,

5

this amount will include all costs, including the Plaintiff's portion of the mediation. Class Counsel submits that the fee request is reasonable given the amount of work expended, the complexity of the issues in this case and the results obtained. (*Id.*) Finally, Defendant has agreed to pay this amount as fees and costs and does not oppose Class Counsel's request.

In addition, Plaintiffs request approval of modest incentive awards for the two (2) Representative Plaintiffs. Courts within the Sixth Circuit recognize that, in common fund cases, representative plaintiffs involved extensively in a collective action case deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone. The settlement earmarks funds to compensate the Representative Plaintiffs for their relative time and efforts spent prosecuting these cases and assisting in creating the settlement fund from which all Plaintiffs and Opt-In Plaintiffs will benefit. Specifically, the parties have earmarked $2,481.205 each for Mr. Fondren and Ms. McClain. Class Counsel submits these incentive awards are fair and reasonable in light of the individual efforts of each Representative Plaintiff. Defendants do not oppose these amounts.

To evaluate proposed incentive awards, courts often consider several factors such as the risk undertaken in bringing the action, the personal difficulties encountered by class representatives, the amount of time and effort expended, the duration of the litigation, and the benefits conferred to the class from the efforts of class representatives. *In re Skelaxin*, 2014 WL 2946459 at *3 (E.D. Tenn. June 30, 2014).

As evidenced by the declarations of Peter Klett, Greta McClain and Mike Fondren, these factors support the requested awards. First, the Representative Plaintiffs incurred certain financial risks by filing and participating in this action, including a potential award of costs attendant to an adverse outcome, loss of earnings, and loss of future job opportunities from

6

background checks which could reveal their participation in the case. Second, the Representative Plaintiffs have spent significant time and effort in these cases in order to confer substantial economic benefits to their current and former co-workers. (Klett Decl ¶ 28) Both of the Representative Plaintiffs were extremely helpful to Class Counsel throughout all stages of this case, including pre-filing investigation, discovery, and the settlement process. (*Id.*) Class Counsel had multiple and lengthy meetings and numerous telephone conferences with the Representative Plaintiffs prior to the filing of, and throughout the prosecution of, this case. (*Id.*) The Representative Plaintiffs were extremely helpful to Class Counsel in understanding Defendants' policies and procedures at issue, and their proper construction and context. (*Id.*) Both Plaintiffs answered written discovery propounded by the Defendant. (*Id.*) Finally, both Representative Plaintiffs were helpful in negotiating a fair settlement. Both participated in the mediation process and the negotiations that followed. (*Id.*) In short, the fact that a favorable settlement has been obtained is due in large part to the commitment and assistance of these Representative Plaintiffs over the course of this litigation. (*Id.*).

Finally, the proposed incentive awards are very modest compared to the aggregate value of the settlement payments that the Opt-In Plaintiffs will receive. In fact, the requested incentive awards constitute only 6% of the entire settlement. (*Id.* ¶ 29). Further, the incentive awards requested are less than what is often awarded in similar cases in which similarly outstanding results were achieved. (*Id.*). As a result, Plaintiffs submit that the requested incentive awards are appropriate, and should be approved by the Court.

B.  **Release of claims**

In exchange, the Named Plaintiffs and the Opt-Ins have agreed to dismiss this case, with prejudice. They have also agreed to waive and release the Defendant from all claims brought

7

in this case including their claims for overtime compensation under the FLSA up to the period when Defendant reclassified the position.

## ARGUMENT

The Parties have reached a settlement agreement. The Agreement is attached as Exhibit A to the Klett Declaration. The settlement fairly and reasonably resolves the Parties' claims and defenses, was negotiated at arms' length between counsel for all parties, and the Court should enter an order approving the settlement accordingly.

### I. The proposed settlement appropriately resolves the parties' claims and defenses.

#### A. Standard for approval of settlement of FLSA collective actions

Although it is not clear in this circuit that court approval of a settlement of FLSA claims is required in every circumstance in order to be binding,[2] parties are certainly free to seek court approval of a private lawsuit brought under Section 216(b)when the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Decl 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-

---

[2] *See, e.g., Martin v. Spring Break #83 Productions, LLC*, 68 F.3d 247 (5th Cir. 2012)(Court upheld unsupervised settlement and dismissing FLSA action, finding an exception from the general prohibition against unsupervised waiver or settlement of FLSA claims where the unsupervised settlement involved a bona fide FLSA dispute over hours worked or compensation owed).

2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

**B.   A *bona fide* dispute exists over liability and damages.**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A *bona fide* dispute exists in this case. Plaintiffs claim that they were misclassified as exempt and further contend that they are entitled to overtime under the FLSA. Pointing to the administrative exemption and interpreting regulations, Defendant specifically denies these claims and further denies that Plaintiffs are owed any overtime under the FLSA.

On top of the exemption-liability issue, the Parties also had opposing views on other damages components such as: (1) how to calculate damages, (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period applied. Defendant

9

claims to have had a good faith basis for believing that Total Loss Claims Adjusters were exempt, based upon the Department of Labor regulation set forth above. Thus, Defendant believes Plaintiffs face a significant risk that only the two year limitations period would apply to this case.

Although both Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for release of claims by Plaintiffs and dismissal of this case with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The settlement is fair and reasonable.

In addition to resolving a *bona fide* dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons.

First, the proposed settlement arises out of an action for alleged unpaid overtime and other wages brought by Plaintiffs against their alleged employer. While the amount each Plaintiff obtains will necessarily depend on the number of workweeks he or she worked as an exempt Total Loss Claim Adjuster during the limitations period, the settlement is based upon eight hours

10

of overtime each week during the three year Recovery Period. This amount is slightly more than half of the range Plaintiffs are claiming they worked and covers a three year, rather than two year time period. Plaintiffs believe such a compromise is reasonable under the circumstances and in light of the defenses and risks of litigating this matter. Thus, Plaintiffs and Class Counsel believe this is a fair recovery considering that: (1) Defendant had reasonable arguments for why the Plaintiffs should get no recovery at all; (2) had legitimate arguments that liquidated damages were not available; (3) had legitimate arguments that a two year ___ would apply and (4) arguments that even had Plaintiffs prevailed the damages would have been quite low.

Second, there is no collusion that occurred between counsel. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). Rather, this settlement was reached as a result of arms-length negotiations between the Parties through experienced attorneys, with the help of a widely-respected mediator. A full day of mediation was not enough to get this matter resolved; instead, it only settled via the mediator's continued persistence.

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel both respected in the community and experienced in handling wage and hour collective actions. Class Counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Class Counsel has a long-standing multi-jurisdictional practice representing employees with claims against employers similar to the claims asserted in this case. (Klett Decl.) Defense counsel is likewise experienced in defending similar claims. Counsel for both parties have advised their respective clients regarding the

11

settlement representatives of whom were also at mediation, and they have recommended judicial approval. Courts routinely give those recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, the Parties had very divergent positions on damages components such as whether liquidated (double) damages were appropriate and whether Defendant acted willfully. The Parties submitted briefing to the mediator on all of these issues before mediation, and the mediator counseled both Parties as to their weaknesses and strengths in these areas.

Fifth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery and completing dispositive motion practice (including decertification) would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources completing written and deposition discovery, including depositions of the Named Plaintiffs, various Opt-In plaintiffs, and Defendant's upper management witnesses. Similarly, if this case had not settled, the Parties would have spent significant time briefing decertification and drafting dispositive motions. After the resolution of these issues, the Parties may have faced the prospect of an expensive, lengthy bench trial as well as likely appeals and

post-trial motions. Rather than take this path, the Parties directed their efforts toward an early, informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved in this litigation, preparation for the Parties' mediation session enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II. Plaintiffs' counsel's requested attorneys' fees and costs are reasonable and should be fully awarded.

The proposed award of attorneys' fees and expenses is fair, reasonable, and should be approved. Defendant has agreed to pay to Class Counsel $50,000 for attorneys' fees, litigation expenses, and costs. Moreover, "the attorneys' fees provision[] of the . . . FLSA exist to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984). The attorneys' fees Defendant has agreed to pay in this case will be apportioned between two law firms of record, Bewley Law PLLC, and Dickinson Wright PLLC.

In the Sixth Circuit, the only requirement for awards of attorneys' fees to class counsel is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Property*, 9 F.3d 513, 516 (6th Cir. 1993); *see also Blum v. Stenson*, 465 U.S. 886, 893 (1984). "The Sixth Circuit currently accepts two methods of determining the reasonableness of a fee request": (1) the lodestar method, under which the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate, and (2) the percentage of the fund method,

13

under which the court determines a percentage of the settlement to award to class counsel. *In re Telectronics Pacing Sys.*, 127 F. Supp. 2d 1029, 1041 (S.D. Ohio 2001); *see also Rawlings*, 9 F.3d at 517.

Courts often look at the following factors in determining if fees are reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Id.* (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

As the United States Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic resources to vigorously litigate their rights. Without compensation to those attorneys who are willing to undertake the inherent complexities and unknowns of class action litigation, enforcement of the federal and state laws would be jeopardized. *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, thus providing a huge service to the judicial process and society as a whole.

As stated above, the complexity of this case and the novelty of the issues presented required a high level of skill and knowledge regarding wage and hour class action law. As evidenced by the Declaration filed by Class Counsel, it is respectfully submitted that Class Counsel has unique skills and qualifications in the area of wage and hour class action litigation. Certain members of Plaintiffs' legal team have tried several wage and hour class action cases, which is extremely rare. As a result, Class Counsel understand first-hand the risks, difficulties

and costs associated with actually preparing and taking a wage and hour class action to trial, as opposed to negotiating a favorable, albeit compromise, settlement agreement.

Likewise, Class Counsel has been all the way to the United States Supreme Court in the landmark wage and hour case of *Long John Silvers, Inc.*, v. *Cole, et. al.*, 514 F. 3d 345 (4th Cir. 2008), *cert. denied* 555 U.S. 815, 129 S.Ct. 58, 172 L.Ed.2d 24 (2008), and as a result are acutely aware of the appellate process in wage and hour actions such as these.

In this case, the proposed attorney fee and cost award of $50,000.00 is appropriate under the loadstar method. As evidenced by the declaration of counsel, Plaintiffs' attorneys' fees and costs exceed the $50,000.00 that has been requested. The declarations set forth the hourly rates claimed by counsel for Plaintiffs, the hours billed, the expenses incurred, all of which Plaintiffs contend were reasonable and necessary for a case of this nature. Moreover, counsel for Plaintiffs made counsel for Defendant aware that fees would exceed $50,000.00 through settlement, and Defendant has not challenged this assertion. This case was actively litigated, and Defendants do not challenged that the attorneys' fees award reached as part of this settlement is fair and reasonable.

## CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel, which resolves a *bona fide* dispute over overtime and minimum wages. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel requests that this Court award $50,000.00 as reasonable attorneys' fees and litigation costs in the amount requested, as well as a service award

to Greta McClain in the amount of $2,481.21 and Michael Fondren in the amount of $2,481.20.

Finally the Parties jointly request that this action be dismissed with prejudice.

Dated: January 18, 2018

Respectfully submitted,

**JAMES BEWLEY LAW PLLC**

/s/ Jennifer Bryant
James Bewley, TN Bar #026788
Jennifer Bryant, TN Bar #034148
300 10th Ave South
Nashville, Tennessee 37203
Tel: 615-988-9411
jbewley@JBLfirm.com
jbryant@JBLfirm.com

**DICKINSON WRIGHT PLLC**

/s/ Peter F. Klett
Peter F. Klett, TN Bar #12688
Joshua L. Burgener, TN Bar #29077
424 Church Street, Suite 800
Nashville, TN 37219-2392
Tel.: 615-244-6538
pklett@dickinsonwright.com
mdholmes@dickinsonwright.com
jburgener@dickinsonwright.com

*ATTORNEYS FOR PLAINTIFFS AND PUTATIVE OPT-IN PLAINTIFFS*

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/ Jonathan O. Harris
Jonathan O. Harris, TN Bar #21508
Casey M. Parker, TN Bar #33081
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446

*ATTORNEYS FOR DEFENDANTS*
